The United States Court of Appeals for the Ninth Circuit is now in session. Well, good morning. Judge Fletcher and Judge Berzon and I would like to welcome you to the Ninth Circuit. We have four arguments set for today, but we wanted to take a moment to just celebrate a very important day. Our courtroom deputy, Stacy, has been with the court system for 30 years, 20-plus years with our court, and this is her last day of argument. She will gavel at the end of today for her last time as a court employee. I'm sure you will gavel at home many times just as reminiscence of your time here. But we wanted to just stand and give her a round of applause for all her hard work. Stacy is emblematic of the great court employees that we have that help us do our work. The Ninth Circuit could not function. We were the most effective functioning court during COVID. Other courts came to us, and we said, well, we can't tell you everything because the true answer is your staff, and nobody else has staff like us, and so we appreciate what you've done. Thank you for indulging us. And with that, we will turn to the arguments set for today. And the first argument is Torrey v. Garland. Case numbers 18-70014 and 19-70050. Good morning, Your Honors. This is Octavian Jumonk on behalf of the petitioner, Fafa Torrey. May it please the court, I'd like to reserve four minutes of rebuttal if possible. This case arises from the board's abusive discretion and legal errors regarding the petitioner's motion to reopen based on ineffective assistance of counsel and its errors of law in denying the subsequent motion to reconsider and terminate proceedings due to jurisdictional and claims processing violations. The record clearly establishes an attorney-client relationships in this case between Bakari Conte and the petitioner. So, counsel, I agree with all that. Let me ask you this. Did your client receive a notice to appear, and it had the proper date and location on it? My client received a notice to appear, but the notice—  It was lacking the time and date of the— Well, that was originally—or wait, which one are you talking about? The notice of hearing. Sorry, the notice to appear. There was a notice to appear, and then there was a subsequent notice to appear. Right, the notice of hearing was—you're right, but the notice of hearing was correct, correct? Yeah, the notice of hearing was correct, yes, Your Honor. And that's what your claim is based on, that he didn't appear for that hearing? Correct. Okay. But you've also got a motion to reopen. A motion to reopen and a motion to reconsider. Yeah, yeah, it's the motion to reopen that I'm more interested in. Could you respond to the issue of matter of Lozada? BIA says you didn't comply with matter of Lozada. Yes, Your Honor. To that, we've pointed to Lovi Ashcroft, which is a case that has very similar circumstances that we find here. And this court has not always said that strict compliance with Lozada is necessary. And really, the onus is on whether or not there's some sort of indicia of dilatory tactics or delaying tactics on behalf of the petitioner. That was what this court assumed that Lozada was there for, to curtail that. And what they looked at in order to determine that was whether the record contains indication that the petitioner has done everything that they could do to attend their hearings, and that there was a prior history of attending hearings. And if the court is satisfied that the petitioner didn't have an intention to miss his hearing purely for delaying this, they didn't really say that strict compliance was required. In Lo, the court had even worse facts than they do here. The BIA says matter of Lozada is not complied with because Mr. Torre has not shown that Mr. Conte agreed to represent him in the immigration hearing. What's your response to that? The response to that is that the record does show that there was an agreement for services. First of all, the text messages found within the record has Mr. Conte saying, hey, please deposit $500 to begin the services, to which Mr. Torre says yes. And then the conversations keep going. I thought the question was whether he was retained for this purpose or for the purpose of getting a visa. Right. And to that I would point to the declaration submitted by the petitioner in which he says that Mr. Beccari Conte told him that he was going to file an I-130 petition and then go before the court to adjust its status. Right. So we've got a court date he talks about, and then after the court date is missed, he talks about here's what you can do to fix it. That sounds to me as though there's an agreement to represent him in the hearing. Precisely, Your Honor. At no point during those text messages does Mr. Conte ever say, hey, hold on. You've only hired me for the I-130. You take care of your own proceedings or anything like that. So I think this is what Judge Nelson began asking. Your client, Mr. Torre, did get a notice of hearing with the right date, and he gave it to Mr. Conte because he gave him everything. So, I mean, to me the problem with this case is that, you know, most people before they gave away a notice that told them when their date of hearing was would at least write down what the date of hearing was. So he had every reason to know what the date of hearing was. And if Mr. Conte wasn't answering him, that might be a problem with regard to a lot of other things. But I don't know why it's a problem with regard to when the hearing was when he was told and had a notice of when the hearing was. I understand your point, Your Honor. To that, I would say that this Court has always recognized that there's an enormous amount of reliance a client places on their attorney when they hire them for a specific case. That was recently recognized when this Court issued their decision on the remand from the Supreme Court in Singh v. Garland, where they said specifically that, you know, and they quoted Monjarez v. Munoz, we've recognized that a petitioner facing deportation uniquely relies on an attorney who guides them through a complex and completely foreign process. I don't disagree with that principle on its face. And we have the Lowe decision, which you referenced. But Lowe is different because Lowe, the attorney, affirmatively told the client the wrong date. You agree that didn't happen here, right? The claim here is he just didn't get told the date by his attorney. Correct, Your Honor. This is different in that circumstance. But why isn't that just positive in a way? Because here's the problem. I mean, if we go your way, we are just opening up a huge can of worms here. I mean, it would open up a whole avenue for attorneys just to never remind their client. And then you'd say, well, it was my attorney's fault, and we'd have motions to reopen. We're already flooded with immigration cases. We'd tenfold increase the number of cases we're dealing with. I understand, Your Honor, but I would say that, on the contrary, if we deemed this conduct not to be exceptional but ordinary, I think that this conduct would be perpetuated by all sorts of immigration attorneys. But that assumes that people are giving their notices to their client, to their lawyer, and not themselves noting when the hearing date is. Is there any other case like that where the person had the hearing date and gave it to his lawyer, and the problem was that the lawyer didn't remind him of something he should have already known anyway or did know? Not to my knowledge. Most cases are about a lawyer providing the incorrect hearing date. I mean, for example, in Lowe, do we have any idea whether Mr. Lowe had the notice of hearing and the problem was that he was told the wrong one even though he already had the right one? Is that what happened in Lowe? In Lowe, what happened was that the petitioner knew when the hearing was. He called the office, and the secretary at the office told him a different date than what was on the hearing notice, and Lowe believed the secretary. Lowe actually was being proactive because he knew the date and was calling to confirm it. If I remember right, he knew it was going to be on a Monday, and the secretary said, no, it's actually on Friday. Correct, yes. But according to the rationale that the department would want us to go forward on here, this court should say that Mr. Lowe, after being told the incorrect date, should have called the immigration court to double-check his attorney to make sure that their attorney wasn't wrong. But not to double-check his attorney. He had the notice, gave the notice to the attorney, and he didn't keep a copy of it. When you read the statute, it's not like we're just making this up. We have statute from Congress, and I know this court has not stuck precisely to these, but you're talking about exceptional circumstances or death of a family member. I mean, these are – and nothing less than that. I mean, the language says that. So at a minimum, it seems like we cannot be saying – at least it's not an abuse of discretion to interpret exceptional circumstances not to include things that are within the petitioner's control. What I would argue is that if the court finds that what Mr. Conte did here was ineffective, then they need to find that there was – But that's sort of the question. Why was it ineffective? Because your claim – I mean, these seem tied in together, because your claim is when he called Mr. Conte, Mr. Conte said, ooh, you missed the hearing, and he said, well, I'll just tell him that you didn't tell me. And Mr. Conte actually, in my opinion, gave him the correct advice. Don't do that. You'll lose. And tried to come up with another theory, which was, oh, maybe we can say you couldn't get here by driving, query whether that was enough. But at least Conte was – I thought gave him the right advice. So it's not entirely clear to me why that's ineffective. Well, I would say that that advice was, in many ways, Mr. Conte trying to save himself from any potential liability. Well, there seem to be – I mean, there are two different claims you've got. One is he should be excused because somehow he didn't know, didn't get the notice. The other one is motion to reopen. It strikes me the motion to reopen is your only real chance here. And BIA turns down motion to reopen. Number one, Matter of Lazada, they say he's not been complied with. I'm quite skeptical of the BIA on that point. But the BIA also says, well, wait a minute, it's untimely, and you need some sort of reason why the untimeliness should be excused. And help me understand why the untimeliness for filing the motion to reopen should be excused. Because he's got 180 days. He misses the 180 days. Help me understand why there are some circumstances, or I think the word is extraordinary circumstances, that will allow him to be excused for missing the 180 days for the motion to reopen. And, Your Honor, the main issue here is that Mr. Conte didn't just stay silent on this matter. Mr. Torrey, the petitioner, asked him for advice. What should I do? You know, I asked you for the court date. You didn't give it to me. Mr. Conte told him, well, you need to reopen, but you can't do it on this reason. He dissuaded the client. He dissuaded the client from pursuing this avenue, and that's what led him to filing late. And that should be told. And further, according to the affidavit filed by your client, he asked Conte to get his file. Conte refuses to give it to him, and he doesn't get his file until after he hires Brown. Brown finally prevails on him, gets his file, and then Brown quite promptly thereafter files the motion to reopen, whereby then well outside the 180 days, but what leads up to it is that Conte refuses to give him his file. And without his file, he's kind of stymied. Which also contained his alien number, which was also critical in him finding any information from the court or from the automated phone system about his next hearing. So the question is, does that constitute exceptional circumstances? I believe it does. Thank you, Your Honors. Okay, we'll give you some time for rebuttal. Thank you. Good morning, Your Honors. My name is Michelle Sarko. I'm here representing the Attorney General in this matter. First, I would like to just briefly go through the relevant facts in the case. Petitio was admitted to the U.S. in May 9th of 2013 on a nonimmigrant visitor visa. He was arrested in April 27th of 2014 by CBP and was issued the notice to appear. And given a list of free legal services. Then subsequently, DHS filed the NTA with the Immigration Court in November of 2014. Petitio did not file an asylum application within one year of his arrival, if he was going to claim that that's the relief that he would want. So he's not eligible for that. And January 30th, 2015, the Immigration Court mailed the hearing notice to Petitio for his February 9th, 2016 hearing. Now, Petitio and his wife got married in June of 2015. The marriage was after he was already placed in removal proceedings. Petitio claimed that soon after he and his wife got married, they consulted with the first immigration attorney. So can we, the background's helpful, but can we focus on the issues that are before us, which is really whether the 2018 motion to rescind the absentia, you know, removal order, whether that was proper. I mean, and then we've got the motion to reopen. To me, they seem linked, because if the 2019 motion to reopen is basically based on ineffective assistance of counsel, but it's not clear that there was ineffective assistance of counsel. Right. We would argue that it is not clear from this record, not even from the affidavit that the petitioner put in, that there was ineffective assistance of counsel. Firstly, there was ineffective assistance, but you're arguing that maybe he wasn't representing him for this purpose? Is that the argument? Well, yes, that's the whole thing. There's no possibility that Conte was providing effective assistance. I'm sorry, what's the last part? There's no possibility that Conte was providing effective assistance. The only question you're raising is whether he was representing him with respect to the hearing. Right, right. Because from— Go ahead and answer that. When you look at the affidavit, it talks about— first it talks about that they were going to file the I-130. You know, they came in to the wife and explained the system. First you file an I-130 that gets approved. Then you can apply for— Which was—I mean, it was filed, right, the I-130? Yes. Two months late or whatever? It was filed. It was, you know, maybe four months after they had signed the documents. But it was filed in January of 2016. I don't know why exactly that matters in the sense that— are you suggesting he wasn't representing him for anything? No, I'm saying he did represent him for the— Right, and so if he had these papers and if he was asked for them and asked to tell— if he had the paper that said what the date was and he didn't respond, he was still his lawyer and he still wasn't responding to him. Whether or not he was responsible for the hearing as such, if the hearing occurred, he was still responsible as the custodian of the papers if there's a problem with that. Okay, if you read through the text, there's nothing in the text that specifically says he asked him for the file in order to get the date of the hearing that was coming up or even that he was concerned about the hearing that was coming up. So there's nothing in the text. Well, but, I mean, it seems to me, though, there's no dispute he was representing him. Are you saying—I don't view that as dispositive to the issue. He could have still been representing him, but that doesn't mean he was ineffective as to missing the date. He might have been ineffective. It sounds like he was on a lot of things. Mr. Conte, ultimately, was it disbarred or at least some action was taken? Yes, I'm not sure, but there's no evidence that it was for this case. Right. No, he was suspended from practice at least twice, once before this and once afterwards. I mean, Conte is the lawyer from hell. I'm not familiar with him, but I'll take your word for it. Well, no, I mean, it's just all you've got to do is look. I mean, he was suspended from practice for six months by the Washington Supreme Court in 2012. He was suspended for two years by the Washington Supreme Court in 2017, then suspended from practice by the BIA as a consequence of that in May of 2017. I mean, Conte is the lawyer from hell. But he was repeatedly asking for the documents. He was asking for the documents, but he could have been asking for the documents for the visa application. I really need my documents because I need to find an ID card. Yes, but that has nothing to do necessarily. But he's asking for his documents. In this capacity as a lawyer, the guy has his documents, and he's asking for his documents, apparently all of them, and he's not getting an answer. And this is one of those documents. Well, yeah, I think actually, I mean, it's hard to tell from the text, but basically I think the last text before the hearing was he asked for the ID card, and then the next text after that, oh, and then he says, I'll get back to you on the weekend or something. And the next text was after the hearing. Right, so he never got the documents. So I just think, I think the, I mean, I find this case troubling, but not on the ground that there's a question about exactly what this person was representing him for. He was his lawyer for something. He had all his documents. He's asking for his documents, and he doesn't get them. But even so, he could have called the court. You don't have to have the a number. That's a different question. But as to whether it matters whether this person was representing him for purposes, this purpose or that purpose, I don't see what difference it makes. Well, I guess we'll disagree on that. Well, I kind of, I mean, I don't see how you can't, I don't see how you can say he wasn't representing him. I mean, I think you have to make your argument in that context, and it seems like the argument is, you know, are we going to adopt a rule? And I'd be interested in hearing if we have case law to this effect that when you get a notice of hearing and you give it to your attorney, are you then exculpated under the exceptional circumstances test from showing up at the hearing? The petitioner. The petitioner. Not that I know of, no. I think the case of, was it Lowe? I think the difference with this case is they specifically told him a different date than the correct date. You know, I've got zero problem with your argument as to whether or not he's excused from missing the date. He got the notice. He knew what time it was. He gave it over to the lawyer. He missed the date. My question really goes to motion to reopen because I think that's where he has a shot. Tell me about first matter of Lizada. Why has he not complied with matter of Lizada? Well, so in matter of Lizada, the first thing is, again, establishing the relationship. So that's what the board decided. That's right. I think the panel just signaled to you that we disagree with that.  I understand that. So that's the only finding that the board made. It didn't go to the other two steps of Lizada. So then you're left with if you disagree and you find that there was a relationship, then you move to the next thing. It sounds as though if we disagree on that point because that was the board's only argument, it sounds as though he's complied with Lizada. Well, yes. You would have to say that. Unless you send it back for them to look at the other two steps. But then we get to the question of whether or not there's circumstances that will excuse the lateness. And I just went through them. And I can go through them again for you. I mean, he misses the date. Then the client asks for the documents. Conte refuses to give them to him. The 180 days expires. So we're now outside of that and we need extraordinary circumstances. He finally hires a lawyer. The lawyer, Brown, asks for them and finally gets them. Once Brown gets them, he files promptly for motion to reopen. Why is that not enough? Because the board said that they didn't think that he needed to wait to hire the new attorney. He knew from the time that he got the notice that there was a hearing and he missed it. And the attorney, yes, even if he wasn't giving him the documents, that's another reason to go to another attorney and see if what this first attorney is telling you is right or wrong. There was enough there for him to be suspicious of the advice he was getting from the attorney. So he should have gone at that time, the clock starts to run, and he should have gone within 180 days of that time. That's what the board, and I think it's reasonable what the board said. So, let's see. So if you agree that equitable tolling doesn't apply in this case, then you don't need to go to the exceptional circumstances aspect of the case. And also, with regard to the motion to reconsider, I think the Supreme Court's new decision saying it in Chavez, is it? Oh, Campos Chavez, basically said that a hearing notice for an abstention hearing that's received by the petitioner is a valid notice and doesn't affect jurisdiction. Okay, thank you. Thank you. We'll give you two minutes for rebuttal. I'd quickly like to just draw the Court's attention to the most recent decision in Singh v. Garland because it has some very unique language on this relationship between an attorney and a client relating to hearings. And it says that because of the unique relationship between a lawyer and his client, a petitioner who fails to show up to a hearing because of an attorney can establish exceptional circumstances, even in cases where the petitioner was informed by separate notice contradicting an attorney's advice. And so it seems like this Court is willing to go a little bit beyond. When was that case? Singh v. Garland in September of this year. So that was September of this year. Because Campos came out. Does Campos affect that from the Supreme Court where I thought the Supreme Court said that if you get a notice to appear, that you can be ordered to remove, it was proper to remove in absentia? For claims processing arguments. But here we're discussing the ineffective assistance and exceptional circumstances as it relates to missing that hearing date. And it seems like the Court does put a lot of emphasis in how much a client relies upon their attorney. And I would disagree with the Court that this would open the door to all sorts of claims because this is uniquely exceptional and this is a uniquely exceptional case. Well, suffice it to say we're hearing a lot of that these days. And we've got a case that, you know, we're looking at at the Court where, I mean, we've got people who were, you know, delayed in traffic. We've got people who are going to hear another case just next about they misread the date. I mean, I'm not sure that this is a one-off. Everybody's in here claiming they're one-offs. I understand. But as Judge Fletcher said, this attorney has had multiple instances of misconduct. Well, I agree. I give you that. Yeah, no. But I have to say if you're arguing that he should be excused from missing the date simply because he needs to be excused, I disagree with you on that point. The only point that I think you may have a chance on is on the motion to reopen. So tell me why. I think I'm okay on Lozada. But tell me why he should be excused missing the 180 days on the motion to reopen because he eventually makes it through his lawyer, Brown. And the courts often focus on this concept of deception of the prior counsel of whom the ineffective instance is alleged against. If there's deception or fraud that conduce a petitioner to delay that filing. And there was at least extreme noncooperation because he wouldn't give him the records, didn't give him the records until after he hired a new lawyer. So without them, he was not in a very good position to do anything.  I think my time is up. Thank you very much. Okay. Thank you. Thank you to both counsel for your arguments. The case is now submitted.
judges: FLETCHER, BERZON, NELSON